# COURT OF ERRORS AND APPEALS,

---

DAVID S. BROWN and others, appellants, and FREDERICK A. VANDYKE, Jr., respondent.

The general rule is, that a suit brought for the purpose of compelling the ministerial officers or agents of a private corporation to account, or for misconduct, must be in the name of the corporation itself, and cannot be maintained in the name of an individual stockholder.

In special cases, however, where justice cannot be otherwise obtained, and where the directors, officers and managers having the control of the corporation and its affairs are guilty of misconduct that amounts to a breach of trust, it will be permitted.

What is not such a special case?

A settled account will be decreed conclusive between the parties, unless some fraud, mistake, omission or inaccuracy is shown; and in cases of settled accounts the Court will not, generally, open the account, but will, at most, only grant liberty to surcharge and falsify, unless in cases of apparent fraud.

In order to make an account a stated account, it is not necessary that it be signed by the parties.

Between merchants at home, an account which has been presented, and no objection made thereto after the lapse of several posts, is treated, under ordinary circumstances, as being, by acquiescence, a stated account.

Where a complainant files a bill for a general account, and the defendant sets forth a stated one, the complainant must amend his bill, because a stated account is *prima facie* a bar, until the particular errors in it are assigned.

If parties dealing with commission merchants agree that rests shall be made quarterly, such a mode of stating accounts and calculating interest is not usurious.

The case in Chancery is reported *ante*, page 657.

*C. S. Green* and *P. D. Vroom* for the appellants.

*W. Halsted* and *O. S. Halsted* for the respondent.

ELMER, J. It appears by the pleadings and proofs in this cause, that prior to the year 1842, William R. Hanson, of the city of Philadelphia, a commission merchant, and David S. Brown, also a commission merchant of the same place, were the owners of a cotton mill and works situate in South Trenton, known by the name of the New England Mill, and which they carried on for some time as partners. On the 4th of March in that year, they procured from the Legislature of New Jersey an act incorporating the New England Manufacturing Company of South Trenton, and organized the said Company in the month of June. The stock was divided into one hundred and twenty-eight shares of $500 each. Hanson and Brown each subscribed for sixty-two shares, the remaining four shares being placed in the names of four citizens of this State, who paid only a nominal sum, and were only nominal stockholders, to comply with the law, and to make a board of directors, the establishment continuing afterwards to be owned and controlled, as it had been before, by Hanson and Brown, although professedly carried on under the name of the incorporated company.

These proceedings were a very thinly disguised evasion of the provisions of the act, and did the claim of any of the parties depend upon this Court giving their sanction to them, we should without hesitation decline to do so. Parties who come into a court of equity and claim its aid, must come with clean hands. If they have violated the letter or the spirit of any of our statutes, and have thus got into difficulty, they cannot be relieved by our tribunals, but must be left to reap the fruits of their own wrong doing.

It is not perceived, however, that the rights of any of the parties in this case, depend upon the regularity of the incorporation. Both claim it to be a regular corporation, and must stand or fall by its acts. After the organization of the Company, the defendants, composing the firm of David S. Brown & Co., acted as its factors and agents until the fall or winter of 1845. They made the requisite advances, and received and sold the products of the mill. At that time the firm of William R. Hanson & Brother became the factors and agents, and transacted the business until

the summer of 1846, when they failed, and David S. Brown & Co. again became the factors, and so continued until the works were suspended in 1848.

When the commission business for the Company was transferred from David S. Brown & Co. to William R. Hanson & Brother, the accounts of the said David S. Brown & Co. were closed, and the balance found to be due them by the Company, amounting to $1,597.64, was settled by a draft of the Company on the said Hanson & Brother, falling due December 31, 1845, which was duly paid at its maturity.

At the time of the failure of Hanson & Brother, or shortly afterwards, certain drafts drawn by the New England Manufacturing Company, accepted by them, and discounted by one of the Trenton banks, were dishonored, and it became necessary to make some provision for their liquidation. For that purpose, on the 22d of October, 1845, by mutual arrangement between Hanson and Brown, and for the accommodation of the Company, three drafts were drawn by the Company on David S. Brown & Co., payable in six, eight and twelve months, for the aggregate sum of $16,398.01, which the said David S. Brown & Co., accepted and paid. At the same time, by way of better securing Brown & Co., in case they should have to pay the drafts out of their own funds, a bond and mortgage was made, purporting to be by the Company to S. G. Potts, Esq., for the amount of said drafts, to be by him held in trust for the benefit of the bank discounting the drafts, or of Brown & Co., if they paid them.

In the month of May, 1847, William R. Hanson transferred sixty-two shares of the stock of the Company to the complainant, retaining to himself one share he had obtained after the original organization of the Company, which said sixty-two shares are held by complainant as collateral security for money due him by Hanson & Brother. Afterwards, in the month of March, 1848, Mr. Potts, by direction and for the benefit of the defendants, David S. Brown & Co., filed a bill in the Court of Chancery, to obtain a foreclosure and sale of the mortgaged premises. Vandyke, some time afterwards, presented a petition to the Chancellor, alleging that the aforesaid mortgage was never sanctioned

by a legal board of managers, and was not valid, and that the Company, being controlled by Brown, would make no defence. He was thereupon permitted to appear and answer the mortgage bill as if he was a defendant. Subsequently a suit was commenced in the Supreme Court of this State, by David S. Brown & Co., against the New England Manufacturing Co., to recover the amount of the aforesaid drafts. The case now before us was then commenced, and preliminary injunction issued, restraining the proceeding at law.

The bill sets forth, among other things not necessary to be noticed, most of the foregoing circumstances, and states that although the said David S. Brown & Co. may have paid the said drafts before the Company had placed money or funds in their hands to pay the whole amount of money therein named, yet the complainant doth not admit that the Company is indebted to the said David S. Brown & Co. in the amount so paid. On the contrary, he charges that, previous to the maturity of said drafts, they had received large sums of money, and had at the time of the payment thereof a large amount of funds belonging to said Company, which ought to have been applied to the payment of said drafts, and which but for their gross negligence they might have so applied. He further states that the said David S. Brown & Co. had made unjust and illegal charges for commissions and interest and in other respects, and that if a fair statement and settlement of the accounts between the said Company and the said David S. Brown & Co. can be had, under the direction of the Court, and all improper charges, illegal commissions, and usurious interest shall be stricken from the accounts, and all just allowances made, the Company would appear to be the creditor and not the debtor of the said David S. Brown & Co. He therefore prays that an account may be taken and an injunction issue to restrain the said David S. Brown & Co. from prosecuting their suit on the drafts, and makes the individuals composing the said firm, and the New England Manufacturing Co. of South Trenton, the defendants. To this bill the said individuals put in their answer, the incorporated Com-

pany not appearing or answering, and a replication being filed and proofs taken, the cause was brought to a hearing.

The Chancellor, by an interlocutory decree made on the 29th day of November, 1851, orders that it be referred to a Master to take a mutual account of all the dealings and transactions between the said New England Manufacturing Co. of South Trenton and the said David S. Brown and others, gives special directions to disallow certain commissions, and also certain charges for short measure, and to continue the account down to the commencement of the suit in the Supreme Court, and orders that the injunction formerly granted for stay of the defendant's proceeding at law be in the meantime continued, and that the complainant is entitled to his costs, further directions being reserved. From this decree the aforesaid individual defendants appeal to this Court.

It is insisted by the appellants in their petition of appeal, that upon the pleadings and evidence, the Court ought not to have decreed that it be referred to a Master to take an account; and that is the first and most important question to be settled; for if the case as presented did not justify the reference to take an account, neither did it justify the continuance of the injunction, but the bill ought to have been dismissed.

The individual defendants, composing the firm of David S. Brown & Co., ordered by the decree to render an account of their transactions with the New England Manufacturing Co., were the factors and agents of that Company, and the complainant holds, as collateral security for a debt due to him by Hanson & Brother, a large amount of its stock. It is undoubtedly the general rule that a suit brought for the purpose of compelling the ministerial officers or agents of a private corporation to account or for misconduct, must be in the name of the corporation itself and cannot be maintained in the name of an individual stockholder. In special cases, however, where justice cannot be otherwise obtained, and where the directors, officers and managers, having the control of the corporation and its affairs, are guilty of misconduct that amounts to a breach of trust, it will be permitted. (3 *Edw. Ch. R.* 446; 11 *Shepl. R.* 9; *Ang. &*

*Ames on Cor.* sec. 312.) Does this appear to be such a special case, or ought it to be regarded as coming within the general rule ? All the charges of misconduct or illegality, in reference to the transactions now in question, so far as the same relate to the officers or directors of the corporation and their acts as such, except in relation to the want of a board competent to execute the mortgage, are explicitly and fully denied in the answer, and are not supported by any proof. There is therefore no breach of trust shown on the part of those officers and directors which can justify an account upon a bill filed by a single stockholder.

But it is now insisted, on the part of the complainant, that the filing of the bill against the company to foreclose the mortgage, and the permission given him to answer that bill, put the Court in full possession of the case and precluded the suit at law on the drafts. Admitting the propriety and regularity of that permission, for which there seems to be no precedent, and which was certainly very questionable, it is difficult to perceive how the pendency of the proceedings on the mortgage can justify this suit. The bill in this case is an original bill, and not a cross or a supplemental bill; and although the suit at law is to recover the same debt intended to be secured by the mortgage, the proceedings are altogether distinct and independent. If the Company has an equitable defence against the payment of the drafts which it cannot have the benefit of at law, it is entitled to file a bill to obtain it; but it is no justification of a bill for such relief on the part of an individual stockholder, that he was permitted to defend a suit in Chancery, against the corporation, to foreclose a mortgage. That suit is entirely in the power of the parties who instituted it, and may be continued or abandoned at their pleasure.

The objection, then, that this complainant has no right, under the circumstances of this case, to ask for the account ordered, seems fatal to the decree. But if that objection was out of the the way, let us see whether the facts disclosed by the pleadings and proofs will justify an account. It appears that during the agency of David S. Brown & Co., from the organization of the incorporated company to the close of the year 1845, when Han-

son & Brother became the factors and agents, accounts of sales and accounts current were regularly furnished by them to the Treasurer of the Company at short intervals. And not only were the accounts thus furnished, but the balance then due was actually settled and paid to them, by a draft of the Company, drawn on Hanson & Brother, and duly honored. No doctrine of equity is better established than that it is a good bar to a suit for account, that the parties have already in writing stated and adjusted the items of the account and struck the balance. And much more will a settled account be deemed conclusive between the parties, unless some fraud, mistake, omission or inaccuracy is· shown ; and in cases of settled accounts the Court will not generally open the account ; but will at most only grant liberty to surcharge and falsify, unless in cases of apparent fraud. (*Story Eq.* sec. 527.)

Hanson & Brother were the factors and agents of the Company, from the latter part of 1845 until June 1846, when they failed, and the drafts in question were drawn and accepted, to provide for liabilities they had failed to meet. The accounts of David S. Brown & Co., from that renewal of their agency in 1846 until its close in 1849, and now in evidence, show a large balance due to them over and above the drafts. They were made out in the mode previously practised and settled, and were from time to time delivered to the officers of the Company. These accounts were not, like those previously rendered, settled and paid, but they were stated accounts, which the officers of the Company had ample time and opportunity to examine, and to which they never objected. In order to make an account a stated account, it is not necessary that it should be signed by the parties. Between merchants at home, an account which has been presented, and no objection made thereto after the lapse of several posts, is treated, under ordinary circumstances, as being, by acquiescence, a stated account. (*Story Eq.* sec. 526.) And it is to be remarked, that the complainant was himself elected a director in July 1848, until after the close of the agency of Brown & Co., if he be not, as it would seem, a director to this day. At a meeting of the directors, held in January, 1848, it was ordered

by the board that a statement of the amount of capital paid in, and the amount of all existing debts due from the Company, should be published, in conformity with the charter, and such a statement was accordingly made, signed and sworn to by Hanson as President, and two of the directors, including, as it is evident, the balance appearing to be due to David S. Brown & Co., upon the accounts previously rendered. The same debt was again reported to the board in February, 1849, and together with the debt included in the drafts, and several other debts to other persons, appears in the regular minutes of that meeting.

It is the settled rule of courts of equity, that where a plaintiff files a bill for a general account, and the defendant sets forth a stated one, the plaintiff must amend his bill, because a stated account is *prima facie* a bar, until the particular errors in it are assigned. (1 *Atkins*, 1; *Story Eq. Pl.* sec. 798.) In this case, stated accounts are set forth in the answer, and are shown in evidence. The special and particular errors of those accounts are not made the subject of the bill or of the decree. The order of the Chancellor is, not that the Master correct specific errors; but that he make a general and new account of all the dealings between the parties. This is manifestly unjust, in a case where it appears that regular accounts were rendered according to the previous usage, to which no objections were ever made, and which were not only tacitly acquiesced in, but were in the most distinct and formal manner recognized as correct by the directors, at regular meetings of the board.

Even if the bill had pointed out specific errors, the evidence does not warrant opening the accounts. Adopting the language of the Chancellor, (4 *Paige*, 495,) " The mode of keeping accounts are so various that it is difficult for third persons to understand them, in many cases, with all the lights which the evidence in a cause can throw upon recent transactions. The practice of opening accounts, therefore, which the parties who could best understand them have themselves adopted, is not to be encouraged. And it should never be done upon a mere allegation of errors, supported by doubtful or even by probable testimony only; especially where the parties to the settlement stood upon

terms of perfect equality, so that there could be no pretence of fraud or imposition practised by one party upon another."

According to the allegations of the bill itself, David S. Brown and William R. Hanson were in point of fact the joint and equal owners of the stock of the Company, which was carried on for their mutual benefit, and so continued until the transfer of the sixty-two shares to complainant; and they were both at the head of commission houses in Philadelphia, and had at different periods transacted the business of the Company as its factors and agents. No fraud or collusion between them is alleged. Both parties therefore stood on perfectly equal terms, so that after the accounts in question were submitted to the scrutiny of the latter, and after he had in the most formal manner sanctioned them as correct, and the board of directors at a regular meeting had done the same thing, and caused the balance due to be entered on their book of minutes, as an acknowledged debt of the Company, it would be contrary to the plainest principles of equity to permit them to be treated as open accounts, or to open them for re-adjustment, in the total absence of testimony showing fraud or concealment.

The objections urged against various items of the account are in fact shown to be without foundation. Up to the settlement in December, 1845, we consider them finally settled by the parties. Those delivered subsequent to that time are made out in the same manner, and upon the same principles. The mode of calculating interest, the charges of 2 1-2 per cent. commissions on sales of goods sent to Boston and New York, the charges for printing some of the cloth, and the charges for short measure, are all the same in the accounts prior to 1845 as in those after that date. It is not proved, nor indeed is it alleged, that any change was made in the mode of transacting the business, or that David S. Brown & Co. were ever notified by Mr. Hanson while he owned the stock, or by the complainant after it was transferred to him, that their previous mode of managing the business and stating the accounts was objected to. Under such circumstances, they were warranted in going on as they had done.

Much was said on the argument about the importance of the principles involved, and the necessity of protecting the manufacturing interests of this State against the illegal and unconscientious charges of commission merchants in the neighboring cities, which it was said, commonly swallow up all the gains of the manufacturer and involve him in ruin. The rests at irregular intervals, averaging about once in three months, are said to compound the interest, and to be unjust and illegal. The practice adopted in many cases, of converting the printing · cloths. into finished prints, at works in the neighborhood of Philadelphia, at the expense of the Company, and of sending some of them for sale to other commission houses in Boston and New York, at an additional charge of 2 1-2 per cent. for commissions, are urged to be contrary to the duty of a factor, and therefore illegal. All this may be true, and, when a proper case arises, may require the decided disapprobation of the Court. But business men must be allowed to make their own bargains ; and when they do so understandingly, and are not entrapped or deceived, their bargains must be enforced. If the parties dealing with commission merchants agree that rests shall be made quarterly, it has long been settled, that such a mode of stating accounts and calculating interest is not usurious, but is perfectly legal. A factor to whom goods are sent for sale, is undoubtedly bound to follow the instructions of the owner, or in the absence of instructions to sell them according to the usage of trade in similar cases. But if the owner instructs him to alter or improve the articles sent, before he sells them, or to send them to another market at his discretion, then it is perfectly legal for the factor to do so, and the owner is responsible for the additional expense and charges.

There is here the most ample evidence that the practices now complained of, had been common from the commencement of the business, and had been adopted and approved by the Company. To sanction them is only to sanction its free agency, in matters the effect of which on their interests the officers and stockholders were much more competent to judge than any other person. Whether they were in fact such as produced loss does not ap-

pear, for it may be that no other house would have transacted the business on terms equally beneficial.    But whether they were favorable or unfavorable it is now too late to enquire.    Every presumption is in their favor.    A case in which the parties interested stood upon a more perfect equality or had better opportunities of judging what was most for their interest, can seldom occur.

Upon every view of this case we are of opinion that the decree is erroneous, and that it should be reversed, and the case sent back to the Court of Chancery, with instructions to dissolve the injunction and dismiss the bill with costs.    The costs in this Court to be borne by the respective parties.

The decree of the Chancellor was unanimously reversed.